8542

HOLCOMB v. SPARTANBURG RAILWAY, GAS & ELECTRIC
COMPANY.

1. CARRIER—PASSENGER—PUNITIVE DAMAGES.—Under evidence showing
a conductor knew a connecting car had left, when he assured a pas-
senger that he could make the connection, the issue of wilfulness
was properly sent to the jury.

2. CHARGE.—Part of charge complained of as on the facts held to be
a statement of the issues as they appear in the pleadings.

3. CARRIER—PASSENGER—EVIDENCE.—CONVERSATION between passenger
and one having charge of carrier's cars is competent in an action
against the carrier for failure to take the passenger to connection
as promised

Before GAGE, J., Spartanburg, January, 1912.    Affirmed.

Action by Thomas L. Holcombe against Spartanburg
Railway, Gas and Electric Company.    Defendant appeals.

*Messrs. Sanders & DePass,* for appellant.

*Messrs. Nicholls & Nicholls* and *C. P. Sims,* contra.

May 12, 1913.    The opinion of the Court was deliv-
ered by

MR. JUSTICE WOODS.    The statement of the case and
points at issue made in appellant's argument is so excellent
that we adopt it.

"This action is brought to recover damages for the
alleged wilful and malicious failure of the defendant to
carry the plaintiff from the Southern depot, in the city of
Spartanburg, to Clifton, S. C., after receiving him in one
of its cars and contracting to do so.

"The following are the undisputed facts:

"The plaintiff, with his wife and children, were passen-
gers on the train of the Southern Railway Company, with
tickets to Clifton, S. C.    The train, on the night in question,

arrived at Spartanburg at 8:02 o'clock p. m., and left Spartanburg at 8:10 o'clock p. m. The car of the defendant on which the plaintiff took passage, as he says, for Clifton, left the Southern depot at 8:15 o'clock p. m. This car did not go to Clifton, but ran from the Southern depot to the eastern end of Main street, and the passengers desiring to go to Clifton were transferred in the city at the crossing of Church and Main streets. The last car of the defendant going to Clifton leaves the point of transfer at sixteen minutes after seven. When, therefore, the plaintiff boarded the car of the defendant at the Southern depot the last car going out to Clifton had been gone about one hour.

"The following facts are in dispte:

"The plaintiff testifies that on leaving the car of the Southern Railway he went to the street car of the defendant and asked the conductor if he could go to Clifton that night on that car; that the conductor told him he could. That he, with his wife and children, boarded the car and went to the crossing at Main street. At that point the conductor told him to get off; that the car to take him to Clifton would be there in a few minutes. The testimony of the plaintiff's wife tends to corroborate him in this respect.

"The conductor of the defendant testified that he knew the Clifton car had been gone about an hour; that he did not tell the plaintiff that he could go to Clifton that night, and did not tell him to get off the car at the crossing, that his car would be there in a few minutes, but did give him transfers which would have been good the next morning.

"The plaintiff testified that instead of waiting until the next morning he hired a hack and paid the hackman one dollar and fifty cents to go to Clifton. He made no effort to find a hotel at which he could have stayed, but voluntarily hired a hack to take him to his destination that night.

"Against the objections of the defendant, the plaintiff and his wife were allowed to tesitfy as to a conversation with Mr. Buckheister, about their not being able to go to Clifton

that night.  At the conclusion of the testimony the defendant moved the Court to direct a verdict to be rendered in its favor as to punitive damages.  The motion was refused. His Honor, at the request of the defendant, instructed the jury that:

"A mere conductor has no authority to make contracts for the running of the cars of a street railway company.

"His Honor further instructed the jury as follows:

" 'Now, the third view of the case is this, and that is the one insisted upon by Holcombe's attorney: Did the street car conductor tell Holcombe to get on this car, and that he could make connection when he knew he could not; did he tell him he could take him through when he knew he could not; and did he, or not, care whether he could take him through or not?  In other words, a total disregard of the duty of carrying and serving the public.  Now, if that is so, the jury could assess against the street car company punitive damages for that sort of conduct.

" 'Now, the testimony must satisfy you by its preponderance that that is so.  Does the testimony satisfy you that on that night the streeet car conductor told Holcombe to board this car and we will take you through to Clifton? Does the testimony satisfy you that he told him that and he knew it was not so, and was he so unmindful of his duty towards the public that he didn't care whether he carried him through or not, so he got his money?  Does the testimony leave you in doubt so that you can't find where the truth lies?  If so, you should find a verdict for the defendant.'

"The jury rendered a verdict for the plaintiff for five hundred ($500.00) dollars.  The defendant thereafter made a motion for a new trial on the grounds, among other things. * * *

"His Honor thereafter passed an order granting a new trial unless the plaintiff would remit all over the sum of three hundred ($300.00) dollars.  The plaintiff thereafter

did remit the sum of two hundred ($200.00) dollars from the verdict and judgment.

"The appeal challenges the correctness of his Honor's ruling.

"(1) In allowing the plaintiff to prove a conversation with Mr. Buckheister.

"(2) In not directing a verdict to be rendered in favor of the defendant as to punitive damages.

"(3) In that he charged on the facts.

"(4) In refusing to grant a new trial absolutely."

While it may be true that it is very improbable that the conductor wantonly misled the plaintiff, still there was direct evidence that although he was familiar with the schedule and knew that the last car for Clifton had gone, yet he assured the plaintiff that he would be taken to Clifton that night. Under this evidence, this Court can not say there was error in submitting to the jury the issue of wantonness.

The portions of the charge quoted in the statement were nothing more than a statement of the issues as they appeared in the complaint and answer.

There was no reversible error in allowing the plaintiff and his wife to testify to a conversation with Buckheister when they were waiting for the Clifton car. The plaintiff testified that Buckheister had charge of defendant's cars, and this fact was admitted by defendant's counsel, and after that fact appeared there was no further objection to the testimony. Besides, the statements of Buckheister were not material to the issue made by the pleading.

Affirmed.