## 10921

### STATE v. HAYS

#### (113 S. E. 362)

1. HOMICIDE—INSTRUCTION THAT ALL WHO AIDED AND ABETTED IN THE CRIME ARE EQUALLY RESPONSIBLE HELD NOT ERRONEOUS.—In a prosecution for homicide, an instruction that all those who were present when deceased received the mortal wound and who aided and abetted in the crime are equally responsible therefor was not erroneous.

2. HOMICIDE—INSTRUCTION THAT THOSE WHO WERE PRESENT WITH THE INTENTION TO AID OR ABET IN CRIME WERE GUILTY HELD NOT ERRONEOUS.—In a prosecution for homicide, an instruction that, where two or more persons combined in the attempt to commit an assault and battery, though they originally did not intend to kill the

person assailed, yet if they did by common consent with malice engage in such an act of assault and battery, and were present aiding and abetting each other, or ready to aid and abet each other, to commit such assault and battery with malice, although they may not have intended that such assault and battery should result in death, yet if death occurred as the result of such assault and battery, they are equally guilty, was not erroneous.

**3.** HOMICIDE—INSTRUCTION THAT ANY RELATIVE, FRIEND, OR BYSTANDER MAY TAKE LIFE OF MALICIOUS ASSAILANT WHERE THERE IS NO REASONABLE MEANS OF ESCAPE PROPER.—In a prosecution for homicide, an instruction that, if an assailant makes a malicious and unprovided assault with a deadly weapon upon a person with the apparent malicious intention to take the life of the person and commit murder, and the danger of such murder is imminent, any relative, friend, or bystander has the right to take the life of such assailant if necessary to prevent the commission of such murder, providing there was no other reasonable means of escape for the person assailed, and provided both the person assailed and the one coming to his defense were without fault in bringing on the difficulty, was not erroneous.

Before MOORE, J., Anderson, September, 1921. Affirmed.

Walted L. Hays and Ed Wilson convicted of manslaughter, appeal.

*Messrs. Sullivan & Cooley* and *Watkins & Prince,* for appellants, cite: *Right of a man to kill an assailant of a relative:* 78 S. C., 253; 13 R. C. L., 837, 839, Secs. 139, 142; 45 L. R. A. (N. S.), 147; 60 S. E., 288; 44 S. E., 851; 18 N. W., 385; 6 Am. St. Rep., 54; 39 L. R. A. (N. S.), 671; 25 A. L. R., 723.

*Messrs. L. W. Harris,* Solicitor, and *L. L. Rice* and *M. L. Bonham,* for respondent, cite: *Where one brings on difficulty he cannot claim self defense:* 65 S. C., 324; 24 S. C., 284; 43 S. C., 154; 33 S. C., 582; 24 S. C., 283; 107 S. C., 446.

NOTE: For killing or assaulting of a relative or friend of defendant as a sufficient provocation to reduce a homicide to manslaughter, see note in 17 L. R. A. (N. S.), 795.

Is one assisting relative in peril bound by the latter's act in bringing on the difficulty, see note in 15 L. R. A. (N. S.), 1013.

July 5, 1922.

The opinion of the Court was delivered by MR. JUSTICE MARION.

Walter L. Hays, Ed Wilson, George Wilson, and Allen Emerson were indicted and tried in September, 1921, for the murder of T. F. Ramey. George Wilson and Allen Emerson were found guilty of carrying concealed weapons. Walter L. Hays and Ed Wilson, who are the appellants here, were convicted of manslaughter, with recommendation to mercy.

The nature of the exceptions upon which the appeal is based warrants a somewhat full outline of the evidentiary facts. The State introduced testimony tending to establish that about 11 o'clock in the morning of the day of the homicide Walter Hays, one of the appellants, and his brother, Tom Hays, drove by the home of Ramey, the deceased, shouted to him an opprobrious epithet and called upon him to "come out and shoot it out"; that Mrs. Ramey, wife of the deceased, ran to the road, begged for peace, and succeeded, as she thought, in making peace; that about 2 p. m. of the same day Walter Hays and Ed Wilson drove in an automobile to a farm where George Wilson worked and had a talk with him; that George Wilson then got his pistol and went with his visitors to a point where they saw and talked with Allen Emerson; that Allen Emerson then went in the house, came out with a pistol in his pocket, and got in the car; that the car containing the four men named was then driven in the direction of Starr; that a car containing Walter Hays, Ed Wilson, and two other men was later seen to arrive from the direction of Starr at the home of Walter Hays, who went in his house, got two guns (a rifle and a shotgun), and put them in the car; that the car was then driven rapidly away in the direction of Ramey's home, some six or eight miles away; that thereafter while Ramey, the deceased, was sitting in a chair

in his yard under the shade of an oak tree mending a tire, Walter Hays drove his car into the yard and up to within a few feet of where Ramey was sitting; that with him in the car were his brother, Tom Hays, and Ed Wilson, George Wilson, and Allen Emerson; that Walter Hays and Ed Wilson covered Ramey with pistols, and Walter Hays told his brother Tom to get his club and beat Ramey until he was satisfied; that Tom Hays then struck Ramey with a mattock handle; that at about that juncture Barney Ramey, the 15-year old son of Ramey, appeared on the scene with a rifle; that Walter Hays fired the first shot; that in the melee that followed Tom Hays was killed, supposedly by the boy Barney Ramey; that the deceased, Ramey, received five fatal shot wounds; and that the tragedy occurred in the presence of Ramey's wife, who was far advanced in a condition of pregnancy.

The defendants introduced testimony tending to show that previous to the day of the homicide Tom Hays and the deceased, Ramey, were on unfriendly terms; that the defendant Walter Hays, at the solicitation of his brother, had tried to compose the differences; that on the day of the tragedy all of the defendants were on their way by the most direct route to a farm controlled by Walter Hays; that in passing the home of Ramey, Ramey hailed them, and by signal invited them to enter his premises; that upon entering Tom Hays got out and went toward Ramey, who advanced to meet him; that, after a few words had passed between them, Ramey suddenly drew a pistol; that thereupon Tom Hays struck Ramey with a chair; that Ramey's son, Barney, then ran out of the house and shot Tom Hays with a rifle; that thereafter Tom Hays and the deceased Ramey began shooting at each other; and that the defendant Walter Hays then interfered in behalf of his brother and struck the deceased, Ramey.

The exceptions, four in number, will be considered in inverse order.

The fourth exception imputes error to the trial Judge in charging the State's second request, which was as follows:

"So if the jury are satisfied by the evidence beyond a reasonable doubt that those named in the indictment were present when deceased received the mortal wound or wounds, and that one or more of them gave the mortal wound or wounds, and the others aided and abetted therein, they are all equally responsible therefor."

The charge complained of stated an elementary proposition of law applicable to the facts adduced in evidence. It is suggested that it erroneously deprived those who might have been present aiding and abetting any of their number in inflicting the mortal wound of the benefit of any legal excuse or justification for the infliction of such wound. The charge was directed to the point of equal responsibility. If there was no responsibility in a legal sense— that is, if the infliction of the wound was excusable or justifiable—it is obvious that all present would be equally excused or justified. In addition to its inherent validity, this portion of the charge was preceded and followed by instructions which made it entirely clear that the responsibility referred to was responsibility for the commission of a felony. The fourth exception is overruled.

The third and second exceptions impute error to the trial Judge in depriving defendants of a fair and impartial trial by intimating and impressing his opinion throughout the charge that the State's theory of the case was correct. The only portion of the Court's charge specified and cited to sustain this sweeping allegation of judical unfairness is the following language used by way of explanation or modification of the defendant's fourth request:

"That is all true, I think, but I charge you that in connection with what I have already charged you that where two or more persons combine and confederate together in

the attempt to commit an assault and battery, and as a natural and proximate result of such a combination, even although they originally did not intend to kill the person assailed, yet if they did by common consent with malice engage in such an act of assault and battery and were present aiding and abetting each other, or present ready to aid and abet each other, to commit such assault and battery with malice, even although they may not have intended that such assault and battery should result in the death of the person assailed, yet if such death did occur as the natural and proximate result of such assault and battery engaged in, why they would be equally guilty."

That that portion of the charge in question and other statements of the law of like import were, from defendants' standpoint, painfully apposite to the facts of the case, is doubtless true. But that the Circuit Judge did not thereby charge upon the facts or intimate an opinion would seem too clear for discussion. Indeed, in the printed points of appellant's counsel no argument as to these exceptions is submitted—an entirely deserved recognition of the fact that the charge of the late lamented Judge Moore as a whole was an exceedingly fair, clear, and able exposition of the law applicable to the facts of an unusually gruesome tragedy.

The first exception questions the correctness of the following instructions:

"In such case the right to take the life of such assailant upon such unprovoked assault extends to any relative, friend, or bystander who would likewise have the right to take the life of such assailant if such act was necessary to save the person so wrongfully assailed from imminent danger of being murdered by such assailant. In other words, if the assailant makes a malicious and unprovoked assault with a deadly weapon upon one person with the apparent malicious intention to take the life of the person assailed and thereby commit murder, then, where

the danger of the commission of such murder is imminent, any relative, friend, or bystander would have the right to take the life of such assailant if necessary in order to prevent the commission of such murder, provided there was no other reasonable means of escape for the person so assailed, and provided both the person assailed and the person coming to his defense were without legal fault in bringing on the difficulty."

This statement of the law is conceded by appellant's counsel to be in accord with the settled law of this jurisdiction, as announced in the case of *State v. Cook,* 78 S. C., 253; 59 S. E., 862; 15 L. R. A. (N. S.), 1013; 125 Am. St. Rep., 788; 13 Ann. Cas., 1051, and recognized with approval in the case of *State v. Brown,* 108 S. C., 490; 95 S. E., 63. The appellant's able argument submitted, pursuant to permission granted, in support of the contention that the doctrine announced in the Cook case should be overruled or modified, has been given careful consideration. The conclusion announced in the Cook case was reached after a careful review of the authorities by Mr. Justice Woods, who in that connection used the following language:

"We have endeavored to show the law as laid down by the Circuit Judge is firmly established. It is true the rule may in exceptional cases work hardship; but the opposite rule would allow the innocent man who had been forced to strike in self-defense to be killed with impunity merely because appearances happened to be against him at the moment a partisan of his antagonist reached the scene of conflict. The duty seems urgent to enforce rather than relax the rule which admits of no excuse for taking human life except necessity."

The Court is clearly of the opinion that the supposed exceptional case of hardship suggested by the learned Justice who wrote the opinion in the Cook case is not presented by the facts of the case at bar. We therefore

find no difficulty in approving without extended discussion the statement of the law as charged by the Circuit Judge. The first exception is overruled.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.