E. L. CHEATHAM v. J. R. YOUNG et al.

*Evidence—Municipal Records—Location of Boundary Lines—Streets—Pleading—Color of Title.*

1. Where it becomes material to prove the contents of a record of the proceedings of a municipal corporation, the party relying upon it may identify or offer the original or introduce a copy properly certified.

2. Documents of a public nature and of public authority are generally admissible in evidence in proof of those matters, the remembrance of which they were called into existence to perpetuate, although their authenticity be not confirmed by the ordinary tests of truth—the obligation of an oath and the power of cross-examination of the parties on whose authority the truth of the document depends; therefore,

3. The records made by the mayor and commissioners of a town empowered to locate, open or widen the public streets, naming and fixing the width of certain streets, and made *ante litem motam*, are competent though not conclusive evidence to locate the boundary line when the streets named or their points of intersection are called for in a deed upon which a party relies.

4. It is competent for a defendant to prove possession by himself and those under whom he may claim, for seven years, in support of a general denial, in an answer, that the plaintiff is the owner, without specially pleading the statute.

Action to recover land, tried before *Bryan, J.,* and a jury, at May Term, 1892, of VANCE Superior Court.

The land in controversy was a strip about two and one-half feet in width, which both parties claimed under deeds

11

introduced in evidence. The width of certain streets referred to in the deeds became material in determining the location of the boundary lines.

The defendants offered in evidence the records of the Commissioners of the town of Henderson.

The plaintiff objected because not proven, and further, that it was incompetent evidence, if proven, plaintiff being neither party nor privy to the proceedings recited, and the proceedings not being such as were authorized by law and binding upon property-holders in the town; and further, if the book is proved to be the record of the Commissioners, it is not such a record as proves the truth of its recitals.

Thereupon, W. W. Young was introduced as a witness, who testified that he was a Commissioner of the town in 1866, and that the book offered was the record of the proceedings of the Town Commissioners.

The plaintiff's objection was overruled, and the book containing the record was permitted to be read. The plaintiff excepted.

The following was read:

"HENDERSON, N. C., May 26, 1866.

"At a called meeting, his Honor the Mayor, I. J. Young, Dr. W. W. Young, J. E. Clark, L. W. Kittrell and S. J. Parham, Board of Commissioners, were present.

"On motion, the street 190 feet northwest of Garnett and running parallel with Garnett shall be called, as formerly, Wyche alley.       *       *       *       *       *

"On motion, the meeting adjourned.

"S. J. PARHAM, Sec.

"Recorded by J. A. C., September 3, 1868."

"HENDERSON, May 22.

"At a regular meeting, his Honor ·Capt. S. J. Parham, Mayor, present; Col. H. Harris, R. G. Moore, Dr. T. C. Debnam, George H. Yancey, W. W. Young, present.

"It was moved and carried that a committee of Dr. T. C. Debnam and George H. Yancey be appointed to assist the County Surveyor, Mr. S. P. J. Harris, in widening Garnett street from John H. Young's corner to Breckenridge street, taking eight feet on the south side and twelve (12) feet on the north side, being from the original street, making Garnett street eighty-six (86) feet wide instead of seventy-five feet, as it now stands, and the Town Attorney be instructed to obtain a deed of grant for said land to the town authorities. * * *

"Adjourned to meet Thursday night.

"W. W. YOUNG, *Secretary.*"

After the argument had commenced, counsel for defendants argued to the jury that plaintiff must show that he, or those under whom he claimed, had been in possession of the land sued for within seven years next before the commencement of this action.

Whereupon, plaintiff asked the Court to charge the jury:

"It is no part of plaintiff's duty to prove possession within seven years. If the defendant wishes to take advantage of the statute of limitations he must plead it, and prove that he has been in possession seven years under color of title, and there is no such plea or evidence offered."

His Honor declined to give the charge as requested, to which plaintiff excepted, but after reading the testimony he charged the jury:

"The burden is on the plaintiff in this action, he must recover upon the strength of his title.

"The original starting points and boundaries are questions of fact for the jury to find from the evidence. I mean all the evidence bearing upon the points. Plaintiff, in order to entitle himself to recover in this action, must show that he holds the legal title to the premises in controversy, and it must further appear from a preponderance of the testimony that at the time of the commencement of this action he was entitled to the possession of the premises.

"Plaintiff says his deeds cover the land in controversy. This is denied by the defendants. It is for you to say where the boundaries are.

" What are the boundaries of the plaintiff's land is a question of law; where they are is a question of fact. The beginning point of plaintiff's land is the corner of Montgomery street and Wyche alley, and plaintiff must locate this corner."

Defendants asked his Honor to charge the jury, "That it is necessary for the plaintiff to show possession of the land in dispute for seven years, under a deed describing the same by metes and bounds, ending within seven years before the commencement of this action," which request was declined by his Honor.

There was a verdict for defendants, and plaintiff appealed from judgment thereon.

*Messrs. Pittman & Shaw,* for plaintiff (appellant).
*Mr. A. C. Zollicoffer,* for defendants.

AVERY, J.: The statement of the case on appeal is not so full or so clear as it might have been made. But it seems to have become material to the location of the plaintiff's boundary to determine where Montgomery street intersected with Garnett street and with Wyche alley; and one of the questions involved in this inquiry was, What was the width of Garnett street, and what the distance from it to said alley? Neither the map used upon the trial nor any one of the deeds is sent up as an exhibit, and it does not appear in express terms from the testimony what was the description of the land claimed by the plaintiff.

Assuming that the inquiry of the jury was directed to the point mentioned, the first exception is to the competency of the minutes of the proceedings of the Mayor and Board of Commissioners of the town of Henderson at two meetings, held respectively on the 22d and the 26th of May, 1866 (*ante*

*litem motam)*, at one of which the entry was, "On motion, the street 190 feet northwest of Garnett and running parallel with Garnett shall be called, as formerly, Wyche alley"; and at the other it appeared that a committee was appointed to assist the surveyor in widening Garnett street from John H. Young's corner to Breckenridge street, so as to make it eighty-six instead of seventy-five feet, as it then was, "by taking eight feet on the south side and twelve feet on the north side."

Where it becomes material to prove the contents of such a record, the party relying upon it may identify and offer the original or introduce a copy properly certified. *State* v. *Voight,* 90 N. C., 741; *The Code,* §1342; 1 Greenleaf on Ev., 485. In this case the original having been identified by the testimony of Dr. Young, only the question whether such a record as that put in evidence is competent is worthy of serious consideration or discussion.

The principle upon which records such as these in question are usually admitted as evidence when duly certified or satisfactorily identified, has been very clearly stated by an eminent text-writer: "Documents of a public nature and of public authority are generally admissible in evidence, although their authenticity be not confirmed by the usual and ordinary tests of truth, the obligation of an oath and the power of cross-examining the parties, on whose authority the truth of the document depends. The extraordinary degree of confidence thus reposed in such documents is founded principally upon the circumstances, that they have been made by authorized and accredited agents appointed for the purpose, and also partly on the publicity of the subject-matter to which they relate. * * * Those who are empowered to act in making such investigations and memorials are in fact the agents of the individuals who compose the public." Such public writings are "only receivable, however, in proof of those matters the remembrance of which they were called into existence to perpetuate." 1 Greenleaf Ev., sections 483 and

484; Best on Evi., section 219; *Clarke* v. *Diggs*, 6 Ired., 159; *Broadhead* v. *Del Hayo*, 20 N. J., 323; *Swinnerton* v. *Insurance Co.*, 9 Bos. (N. Y.), 361. The records offered were made by the governing officials of a town, which was a public agency established with defined powers, one of which was to locate, open or widen the public streets. They were made long before the present controversy arose, and bear intrinsic testimony to the fact that the object in passing them was to fix the relative positions and bounds of Garnett street and Wyche alley, and incidentally the points of their intersection with Montgomery and other streets running diagonally across both. Such records being publicly made by public agents, and presumably for the public benefit, may be more safely admitted to show where the streets of a city or town are located than the declarations of even disinterested deceased persons as to the situation of the lines and corners of land. It has been said that the admission of hearsay evidence as to questions of boundary had its origin partly in the obsolete rule which made it competent to prove prescription by general reputation, and partly in the fact that " in many sections of this country a single surveyed boundary line is common to a number of estates, becoming in this manner a *quasi* matter of general interest." *Boardman* v. *Reid*, 6 Peters, 528; *Shook* v. *Pate*, 50 Ala., 91. In *Davidson* v. *Arledge*, 97 N. C., 172, it was held that a map of the city of Charlotte, shown to have been recognized by the authorities of the city for fifteen years, was competent as testimony tending to show the location of the streets laid down thereon and the distance from one to the other. This ruling seems to have been founded upon the fact that the map was made under the direction of and was approved and corrected by the public agents, whose duty it was to fix the limits of streets, and who were presumed to have acted properly, and to have caused an accurate delineation of their true location to be made for their own guidance. The presumption of accuracy of the map was doubt-

less a rebuttable one in the same way the official declaration as to the proper location of Wyche alley and its distance from Garnett street, and as to the increased width of Garnett street, is competent though not conclusive evidence to locate a boundary line, when the streets named or their points of intersection were called for in the deed. 2 Wharton Ev., section 1310:

It is well settled that it is competent for a defendant to prove possession by himself and those under whom he may claim, for seven years, in support of a general denial in the answer that the plaintiff is the owner, without specially pleading the statute. *Farrior* v. *Houston*, 95 N. C., 578; *Manufacturing Co.* v. *Brooks*, 106 N. C., 107.

There was no error therefore, either in admitting the testimony objected to or in the refusal of the charge as asked by the plaintiff.                                      No Error.