STATE v. MILLARD HENDRICKS.

(Filed 5 March, 1924.)

**Evidence—Expert Opinion—Handwriting—Criminal Law—Larceny.**

Where relevant to the inquiry in a criminal action for the stealing of an automobile to show that the accused was present in a certain city at the time thereof, which the defendant denied and has offered evidence to the contrary, it is competent for a witness to offer in evidence a leaf cut by himself from a hotel register indicating the name of the hotel and dates of registration of guests, with the surname of the accused entered thereon under the date of the commission of the crime, and to testify that it was

a leaf from the hotel register then kept for the registration of guests, with an entry of one under the surname of the accused, but with different initials, and, under C. S., 1784,. for experts in handwriting, by comparison, to testify their opinion that the person who made the entry on the hotel register was the same as the one who signed certain papers introduced upon the trial and admitted to be in the handwriting of the accused.

ADAMS, J., dissenting; STACY, J., concurring in the dissenting opinion.

APPEAL by defendant from *Bond, J.,* at June Term, 1923, of DURHAM.

The defendant was convicted of the larceny of an automobile, and from the judgment on the verdict appealed.

The automobile was stolen from the garage of Dr. Bowling, the owner, on the night of 10 September, 1920, between 10 o'clock at night and daylight. He offered a reward of $100 for its recovery, but did not locate it until 6 October, 1921, at Winston, N. C. The car was completely identified, although on inspection it was found that the number and marks on the engine and carburetor had been knocked off with a chisel and mutilated. It was found in the possession of one Gordon, who purchased it from Roy Ingram, who himself purchased it from the defendant in the latter part of February, 1921.

The defendant testified that he got the car from one Bill York, at Cheraw, S. C., on election day of the year 1920, but produced no other evidence than his own statement of this. Thus the car was traced to the possession of the defendant a little less than two months after it was stolen. The State, in order to connect the defendant with the theft, introduced evidence to show that he was in Durham at the time the car was missed. C. E. Stewart, witness for the State, showed a paper which purported to be a printed leaf out of the register of the Church Street Hotel, in Durham, and testified: "I got that paper from the register at the Church Street Hotel. I personally took it out of the Church Street Hotel register. Mr. Clayton was with me when I took it out. I got it a week or two after Dr. Bowling's car was found." The entry upon this sheet in the register was dated 10 September, 1920, and the name appearing thereon was signed "F. D. Hendricks." Expert witnesses, under the statute (C. S., 1784), were introduced to compare this entry on the Church Street Hotel register on 10 September, 1920, with the admitted signatures of the defendant to the bonds executed in this cause, and also an affidavit filed by the defendant in the cause.

The defendant excepted to the refusal of a judgment of nonsuit.

Both the defendant and his wife pleaded an *alibi* on 10 September, 1920. The defendant testified: "On the night of 10 September, 1920, I was out about five miles from High Point, at my aunt's, Annie Allred. I was not in Durham that night. I never stayed all night in Durham in my life." The wife testified that they were out at his aunt's house

the night of 9 September, and further testified that her husband was in High Point between 9 September and election day.

Upon the verdict of guilty the defendant appealed.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*Hammer & Moser for defendant.*

CLARK, C. J.  C. S., 1784, provides: "In all trials in this State, when it may otherwise be competent and relevant to compare handwritings, a comparison of a disputed writing with any writing proved to the satisfaction of the judge to be genuine shall be permitted to be made by witnesses, and such writing and the evidence of witnesses respecting the same may be submitted to the court and jury as evidence of the genuineness, or otherwise, of the writing in dispute." In this case it was a link in the evidence for the State to prove the presence of defendant Hendricks at Durham on 10 September, 1920, when the automobile was stolen, and, to prove this fact, a paper-writing purporting to be a leaf, with the printed heading, from the register of the Church Street Hotel, bearing date 10 September, 1920, was introduced for the purpose of proving that the name therein registered was in the handwriting of the defendant. Proof of his handwriting was, therefore, relevant and as a basis for comparison of the signature in controversy with his admitted handwriting on the papers in this action with the signature on the leaf was competent when properly identified and authenticated.

The defendant makes two objections to the admission of this evidence—first, that the paper itself was not sufficiently identified as the register of this particular hotel; and second, even if it had been so identified, it was not admissible in evidence against this defendant.

The evidence of the witness Stewart is clear and distinct that this sheet was taken by himself from the register of the Church Street Hotel. It was not necessary to introduce the clerk of the hotel to prove that the defendant made this signature upon such register. The evidence of the witness Stewart that it was a part of that register, bearing date of 10 September, 1920, if believed, which was a matter for the jury, was sufficient to identify the paper as a part of the register of the hotel; and second, the experts testified that the signature upon that sheet of the register was in the same handwriting, in their opinion, as that on the bonds and affidavit; and the defendant himself claimed that he had a brother, named F. D. Hendricks, but that this signature was not in his handwriting.

It has been held that such registers are admissible both as to the party writing the name on the register and the date on which it was

written. In *Latham v. State,* 172 S. W. (Texas), 801, it is said: "He
had the hotel register with him, which was identified by him as such at
the time. The best evidence of the fact was the hotel register with her
signature thereon." There was a rehearing in that case, in which the
original decision of the court was reversed on another point, but the
Court said: "Now, what would be the best or primary evidence that she
had registered under the name of Mrs. C. C. Evert? There can be no
question that the register of the hotel would be the best evidence of that
fact."

In *James v. Conklin,* 158 Ill. App., 643, it is said: "We do not think
the court erred in admitting in evidence the hotel register and expense
account of Kurtz. They were competent as bearing upon the contention
of appellee that Kurtz was not in Olney on 28 August, 1905, and for
that reason he could have been at appellant's place of business on that
day, the date of his receipt to the bills in question."

The evidence in this case by Stewart is that he cut this particular leaf
with this signature out of the register of the Church Street Hotel, bear-
ing date 10 September, 1920, and that he cut it out in the presence of
Clayton, and that there has been no alteration or change in the leaf since
he had thus cut it out. Of the truth of his statement the jury was the
sole judge.

The expert witnesses having further testified as authorized by C. S.,
1784, that in their opinion the handwriting on this leaf of the register
was the same as that of the signature of the defendant to the bond and
other papers in this cause, there was no error in leaving the case to
the jury.

It is not essential that the hotel register itself must be brought into
court and by its proper custodian. It is sufficient if it is proven to the
complete satisfaction of the jury that this particular sheet, with this
signature, was taken from the hotel register bearing the date in ques-
tion, and that the experts could satisfy the jury that the signature on
that sheet was made by the same hand which wrote the name of the
defendant on the papers in this cause. A letter or any other paper with
similar identification of the time and place where written would be
competent.

The contents of the hotel register is not to be proven, nor is it intro-
duced to prove any other fact than that the signature on that leaf was
made by the defendant with the identification of the time and place.
It is no act of the hotel, but merely the presence of the defendant in
Durham which is sought to be proved.

The defendant further assigns as error that the court charged the
jury that the expert witness, Jones, testified that he examined the sheet
which Stewart had testified he had taken from the Church Street Hotel

register in Durham, bearing date 10 September, 1920, and that, comparing that sheet with the other three papers that were admitted to be in the handwriting of the prisoner, the expert testified that in his opinion all four—that is, the word "Hendricks" in all four of the names—was the same handwriting, and that the same hand did the writing; and also assigns as error that the court charged the jury: "The State contends that this defendant was here in Durham the night that the car was taken; that the hotel register leaf kept entries made as people would come in, day by day, showing the time of arrival and departure of different people, the number of room, etc.; that it shows that on Friday, 10 September, 1920, a man registered there as F. D. Hendricks; that he was assigned to room 8; that he arrived at 7:45, whether in the morning or evening does not appear, and that he left, after paying a bill which had run up to $3. The State contends that you ought to find from the evidence in this case that the hand that wrote the word 'Hendricks' was that of the prisoner, and contends that there is a paper here that it is admitted—three papers—all three of which have the word 'Hendricks,' not the same initials, but the same surname, and the State contends you ought to find as a fact the word 'Hendricks' in all four of them was written by the prisoner, and that they ought to convince you that he was here in Durham on the day or during the night on which Dr. Bowling's car was stolen."

The defendant further assigns as error the additional contention of the State that, in the face of these facts—that a man with a stolen car, as the State contends, in his possession, with the number which would serve to identify the car chiseled out, but with the car identified, in his possession, and with the hotel register showing his presence in Durham the identical night the car was stolen—the State contends you ought to find beyond a reasonable doubt that the prisoner is the man who stole and carried away the Hudson Super-Six that belongs to Dr. Bowling."

These were correct statements of the contentions of the State. If the jury believed, of which they were the sole judges, that the hotel sheet shown in evidence was cut by Stewart from the Church Street Hotel register, in Durham, bearing entries for the date of 10 September, 1920, and that the same had not been altered, it was not necessary that the whole hotel register should have been put in evidence, nor that it should be produced by its custodian. The essential fact is, was it the leaf of the hotel register of that date, and if so, it was competent to be put in evidence and for experts, under the statute (C. S., 1784) to testify as to it being, in their opinion, in the same handwriting of the defendant made in the proceedings in this cause.

Upon consideration of all the exceptions, we find

No error.

ADAMS, J., dissenting.

The defendant, who lived in High Point, was convicted of the larceny of an automobile, the property of Dr. E. H. Bowling, whose home was in Durham. The car was stolen from Dr. Bowling's garage on the night of 10 September, 1920, and was recovered by him on 6 October, 1921, at Winston-Salem. It was definitely identified although the numbers on the engine and carbureter had been removed. It was found in the possession of a man named Gordon. He had purchased it from Roy Ingram, and Ingram from the defendant. The defendant claimed to have gotten it from Bill York, at Cheraw, S. C. To show that the defendant was in Durham when the car was stolen the State introduced as a witness C. E. Stewart, who was asked the following questions:

"Q. I hand you a paper and ask you what that purports to be? A. It purports to be a leaf out of the register at the Church Street Hotel. Church Street Hotel is at the corner of Parrish Street and Church Street in Durham.

"Q. What date does that paper bear? A. I got that paper from the register at the Church Street Hotel. I personally took it out of the Church Street Hotel register. Mr. Clayton was with me when I took it out. I got it a week or two after Dr. Bowling got his car back.

"Q. Was that some time in the fall of 1921? A. Yes, sir. I said I got that from the hotel. Mr. Clayton was present when I got it. I have had possession of it most of the time and Mr. W. G. Bramham had it the rest of the time. It is exactly like it was when I took it from the hotel register. There have been no changes or mutilations on it and no writings have been added to it."

The defendant in apt time objected to each of these questions and to the admission of the paper in evidence.

The witness then said: "I find on that paper, dated 10 September, 1920, the name of a man Hendricks. His initials appear to be F. D. I have never seen defendant write his name. I never saw him give either one of the bonds."

Nick Lewis, a witness for the State, testified: "I do not work at Church Street Hotel. I have never worked there. The Durham Hotel and Church Street Hotel in 1920 were operated by the same person. I own the Durham Hotel. I bought it from the man who used to run the Church Street Hotel. I do not know the register that was used in the Church Street Hotel in 1920. I see the leaf that came from the Church Street Hotel; it looks like the Durham Hotel to me. I cannot understand how that came from the Durham Hotel. They showed it to me the other day. I do not know whether they used the same register at both hotels in 1920. Steve Changaris might have taken some leaves

with him to the Church Street Hotel. He was in charge of it in 1920. I do not remember who was the clerk. I never saw those leaves up there. I had nothing to do with the Church Street Hotel. I never have been there in my life. That might have come from the Church Street Hotel but that has Durham Hotel on there. In 1919 I bought the Durham Hotel from Steve Changaris. I do not know what register he used in the Church Street Hotel. I have never been up there. They were both operated by the same man prior to the time I bought it. I purchased the Durham Hotel, I think, in January, 1919, or 1920. I never did own the Church Street Hotel. I never have been up there. I heard that the same people owned them both prior to January, 1919. This leaf says the Durham Hotel. I do not know whether it came from the Durham Hotel or Church Street Hotel. This does not say anything about Church Street Hotel; it was the Durham Hotel. I do not think it came out of the Church Street Hotel. I do not know whether it did or not. I never gave it to Stewart out of my register. I do not know where it came from."

Papers were introduced bearing the defendant's name in his handwriting, and experts compared this with the entry on the hotel register and expressed the opinion that the handwriting in each was the same. This was excepted to by the defendant.

In this case the disputed writing was the name of F. D. Hendricks as it appeared on a paper purporting, as testified by one witness, to be a leaf from the register of the Church Street Hotel, and as testified by another, from the register of the Durham Hotel. The contested question was whether this name was in the handwriting of the defendant. It was the purpose of the prosecution to show that the defendant registered under the name of F. D. Hendricks a short while before the car was stolen, that he disappeared about the time it was lost, and that sixty days afterwards he had the car in his possession. Proof of his handwriting was therefore relevant, and as a basis for comparison of the signature in controversy with his admitted handwriting, the register was competent *when properly identified and authenticated.* *Latham v. State,* 172 S. W., 797, 801, 808; *James v. Conklin,* 158 Ill. App., 640, 643; *People v. McKeown,* 171 Ill. App., 146.

The defendant contended that the signature had been admitted in evidence without due proof that the leaf on which it was written was a part of the register of the Church Street Hotel. Proof that the leaf had been taken from the register of this hotel was particularly important in view of a conflict in the testimony of Stewart and of Lewis. Stewart said he had taken it "out of the Church Street Hotel register." Lewis testified, "This leaf says the Durham Hotel." Identification of the paper was therefore absolutely essential to a fair trial.

In the opinion of the Court it is said that the loose leaf was properly identified by Stewart. This conclusion, I think, is not justified. It was this pretended identification to which the defendant objected *in limine*. He objected because Stewart's testimony was manifestly based either upon the "purport" of the register or upon information derived from another. In either event the basis of his pretended identification was not sufficient. What are the facts? The car was stolen on 10 September, 1920. More than a year afterwards two men who, so far as the record shows, had never before entered the Church Street Hotel went there and, without the knowledge or consent of any one connected with the hotel, abstracted a leaf on which was written the name of F. D. Hendricks. Why did these men conclude that the book from which the leaf was taken was the hotel register? If from what some one told them, Stewart's testimony was incompetent as hearsay. This is elementary. But there is no evidence that any one told them anything. If they reached their conclusion from what the book purported to be, Stewart's testimony was equally incompetent.

The rule is that a record of this character must come from the proper custody, and that its identity and genuineness must be established; for the court must be satisfied by legal and competent evidence that the paper is what it purports to be. The reasons for the rule are thus formulated by Wigmore in his work on Evidence:

1. "Most documents bear a signature, or otherwise purport on their face to be of a certain person's authorship. Hence a special necessity exists for separating the external evidence of authorship from the mere existence of the purporting document. A horse or a coat contains upon itself no indications of ownership; when it is claimed that Doe wore it or rode it, all can appreciate that this element is missing and must be supplied by evidence. But a document purports in itself to indicate its authorship; and the perception that this element is nevertheless missing, and must still be supplied, is likely not to occur. There is a natural tendency to forget it. Thus it has constantly to be emphasized by the judicial requirement of evidence to that effect.

2. "The original of a writing is usually presented to the tribunal 'in specie,' while other material objects are not required to be and seldom are brought into court (except such articles as the tools of a crime or the clothes of a victim) ; so that, in practice, the most common opportunity for the operation of this aberrant tendency occurs for writings, visibly in existence and mutely suggesting that they are all that they purport to be. Thus the mental tendency is especially forcible, frequent, and misleading where documents are involved. For these two reasons, then, it has happened that the specific rules that have grown up concerning modes of authentication have come to relate to writings alone.

"Thus it is that in the traditions of the common law a wise emphasis has been placed upon the necessity of supplying the logical element of authenticity for writings. The general principle has been enforced that a writing purporting to be of a certain authorship cannot go to the jury as possibly genuine merely on the strength of this purport; there must be some evidence of the genuineness (or execution) of it." Vol. IV (2 ed.), sec. 2130.

.It seems to me that the opinion of the Court has lost sight of this distinction and has confused "the mere existence of the purporting document" with the external evidence of its identification, and in consequence of this "aberrant tendency" has approved the admission of incompetent evidence. The foundation for the admission of the objectionable evidence should first have been laid by proving that the register from which the leaf had been taken contained a record of the names of guests and other entries made at the date mentioned in the regular course of the business conducted by the hotel. *Reeves v. Davis,* 80 N. C., 209; *Mott v. Ramsay,* 92 N. C., 152; *Glenn v. Orr,* 96 N. C., 413; *Springs v. Schenck,* 106 N. C., 154; *Darden v. Steamboat Co.,* 107 N. C., 437, 446; *Cheatham v. Young,* 113 N. C., 161; *Trust Co. v. Benbow,* 135 N. C., 303; *Edwards v. Erwin,* 148 N. C., 429.

For error in the admission of evidence there should be a new trial.

STACY, J., concurs in this opinion.