The complaint, among other things, alleges: "That the defendant's intestate, Samuel Kestler, during the year 1924, while in the employment of the plaintiff as auditor of disbursements, as hereinbefore set out, by means of two certain false and fraudulent vouchers issued or initiated by him, and made payable to the order of Phoenix Brokerage Company, one for the sum of $2,970 and the other for the sum of $4,080.16, each of said vouchers purporting to be for fuel oil, when in fact no such *Page 310 
orders had been given and no such purchases had been made, obtained from plaintiff the sum of $7,050.16, and falsely and fraudulently misapplied, misappropriated, embezzled and converted to his own use said sums, to plaintiff's loss and damage in the sum of $7,050.16. That the defendant's intestate obtained the aforesaid sum or sums from the plaintiff with intent to cheat and defraud plaintiff, while holding a position of trust with the plaintiff, to wit, auditor of disbursements, in the following false, fraudulent and deceptive manner: (1) The said intestate issued or initiated voucher No. 18047 in the sum of $2,970, payable to the order of the Phoenix Brokerage Co., said voucher purporting to be for fuel oil, which was never ordered or received by plaintiff, and which voucher was paid by the treasurer of plaintiff on 22 April, 1924. (2) The said intestate issued or initiated voucher No. 22691 in the sum of $4,080.16, payable to the order of the Phoenix Brokerage Co., said voucher purporting to be for fuel oil which was never ordered or received by plaintiff, and which voucher was paid by the treasurer of plaintiff on 20 September, 1924. (3) Both of the vouchers herein mentioned were made payable by said intestate, falsely and fraudulently, to Phoenix Brokerage Company, when in truth and in fact there was no such company in existence; that each of said vouchers was endorsed falsely and fraudulently in the name of Phoenix Brokerage Company, a false and fictitious person or company, either by defendant's intestate or by some one at his request, unknown to plaintiff; that after said vouchers were so endorsed, each of them was deposited for collection and collected by the defendant's said intestate or his agent, through the Fidelity National Bank of Oklahoma City, Oklahoma; that defendant's intestate, thus fraudulently and falsely, obtained the proceeds from the collection of said vouchers and immediately misappropriated, misapplied, embezzled and converted the same to his own use, thereby cheating and defrauding plaintiff out of the sums and amounts above set forth, aggregating the sum of $7,050.16; that plaintiff never received or realized anything of value for said sums, and that the same were obtained, converted, embezzled and misappropriated by defendant's intestate without the knowledge, consent or authority of plaintiff; that by reason of the fraud and deceit practiced on the plaintiff by defendant's intestate, as above set out, the plaintiff has suffered loss and been damaged in the sum of $2,970 with interest from 22 April, 1924, and the further sum of $4,080.16 with interest from 20 September, 1924. . . . That plaintiff did not and could not by the exercise of reasonable diligence discover the alleged fraud and deceit, conversion and embezzlement on the part of defendant's intestate until during the month of April, 1927, a short time prior to said intestate's death, and that some of the facts in connection therewith were not discovered until after the death of said intestate." *Page 311 
The defendant denied the allegations of the complaint and set up the plea of the statute of limitation. Defendant alleged that plaintiff had ample opportunity and ought to have discovered the fraud, if any there was, by the exercise of due diligence. The defendant introduced no evidence.
The facts of the record are to the effect that the defendant's intestate, Samuel Kestler, went with plaintiff's company in 1908. In 1920 he was appointed auditor of expenditures, which position he held until about February, 1925, when he resigned on account of drinking, but the company had every confidence in him. W. C. Logan, the general auditor, was the only one over him. Kestler had direct supervision and charge of all expenditures. The voucher books, records and accounts pertaining to all expenditures were kept under his immediate supervision. In the absence from the city of W. C. Logan, the general auditor, Kestler had authority to initiate and approve for payment vouchers drawn on the company. The voucher after being paid was returned to the office of the auditor of expenditures and filed in the office where it originated. The respresentative [representative] of the Interstate Commerce Commission, in checking up under the Transportation Act, called attention to the fact that two vouchers could not be found on file. A very careful search was made for the original papers dealing with the two items by Logan and they could not be found. (1) Voucher No. 18047 in favor of the Phoenix Brokerage Company of Oklahoma City, in the sum of $2,970, for fuel oil; (2) Voucher No. 22691 in favor of the Phoenix Brokerage Company of Oklahoma City for $4,080.16 for fuel oil. The company had paid out the money, the funds disbursed and the company inured no benefit whatever in the transaction.
All the following evidence was objected to by defendant: Plaintiff kept certain original voucher register sheets in a book kept in the department of auditor and expenditures, made under the general supervision of Samuel Kestler in the usual course of business, made from day to day and month to month. Defendant's intestate had control over also another sheet showing detail of operating expenses, made in the usual course of business in the office. The original sheets, or records, were introduced for the month of March, 1924. Record voucher No. 18047, is described as material, sent Grant Locomotive Works, $2,970. The writing on this voucher being in the handwriting of defendant's intestate, Samuel Kestler. Record also introduced made under the general supervision of Kestler, auditor of expenditures. It shows voucher issued to Phoenix Brokerage Company, to wit: The tenth item, counting from the bottom up, records audit No. 22691; date sent treasurer, 12 September, day paid 20 September, 1924, name Phoenix Brokerage Company for fuel oil, amount $4,080.16. Disbursed and charged to fuel *Page 312 
stock account $4,080.16. The moving of the above item shown in the treasurer's record and his testimony on the dates indicated the above. All the records were identified and proved as coming from the proper depository. Defendant excepted to the above evidence and assigned error, which will be commented on hereafter in the opinion.
Careful investigation was made and there was no such firm in Oklahoma City as the Phoenix Brokerage Company. The vouchers were run through the Fidelity National Bank of Oklahoma City. In that bank was a New York Exchange in Kestler's favor bearing his personal endorsement. Kestler's brother-in-law lived in Oklahoma City. Logan was able to find all the vouchers for all expenditures during Kestler's time, with the exception of the two items in question, and he made special efforts to find these two particular vouchers and was unable to find them. He did not find the supporting orders for these vouchers. In 1924 plaintiff received no material or fuel oil from the Phoenix Brokerage Company.
The transactions in controversy, when the vouchers were made by Kestler, his superior Logan was out of the city at Fort Worth, the head office of plaintiff's company. In 1927 the matter was discovered. W. C. Logan testified in part: "The bookkeeping and auditing is strictly in conformity with the requirements of the Interstate Commerce Commission, that governs and regulates the keeping of accounts and records of steam railroad companies. . . . Q. If you had been diligent in 1924 as you were in 1927, you could have discovered it? A. I think not. I am diligent all the time." The treasurer had no authority to pay unless Logan would be absent. "In his absence both signatures as auditor of expenditures and general auditor were the same, no other signature would be required."
The two items of $2,970 and $4,080.16 passed through the Fidelity National Bank of Oklahoma City and only two vouchers payable to the Phoenix Brokerage Company came through the treasurer's office. The purchasing agent for plaintiff's company kept a record of purchases in 1924, had no record of such and made no purchases from the Phoenix Brokerage Company, and never had any business transaction with that company and never heard of such a company, and never received any fuel oil from such a company. He purchased everything for plaintiff except the food for the dining car. The auditor of expenditures initiated the vouchers.
H. B. Ruch, chief clerk to the general auditor, testified, in part, unobjected to: "My records don't show that the Fort Worth and Denver City Railway Company received any oil from the Phoenix Brokerage Company in September during the year 1924. From the records in my office the railway received no fuel oil in 1924, from the Phoenix *Page 313 
Brokerage Company. They received nothing from that company in 1924. The two vouchers issued to the Phoenix Brokerage Company in 1924 were not issued in payment of anything received by the Forth Worth and Denver City Railway Company. I have investigated the Phoenix Brokerage Company. There was no such organization known other than this particular transaction. I know from what particular point we purchased fuel oil in 1924."
R. C. Stuart, vice-president and cashier of Fidelity National Bank of Oklahoma City, testified in part: "L. D. Lindsay had an account in our bank in the years 1923 and 1924." The bank issued a draft to S. Kestler about 24 April, 1924, name of A. Kestler is on the back of it. "All these records are the original records of the bank and were made at the time of the transaction, and the Exhibits `A' and `B' show items on the amount of $2,970 and $4,080.16, as being deposited to the account of L. D. Lindsay."
L. D. Lindsay, who was the brother-in-law of Kestler, who lived in Oklahoma City, testified in part: "In 1924 he (Kestler) was living at Forth Worth, Texas, working for the Fort Worth and Denver City Railway Company. Don't know how long he worked for them; it was a number of years. He came up to see me while I lived at Oklahoma City, and I had business with him. I carried a check or voucher through the Fidelity National Bank at the instance of Sam Kestler in the year 1924. There were two transactions of this kind. That occurred in April and September, 24 April and 24 September. Q. Now, Mr. Lindsay, just tell us what occurred; that is, what you did with reference to each of those transactions that you mentioned. (Objection by the defendant, under section 1795, C. S.; objection overruled; exception, assignment of error.) Sam Kestler came to Oklahoma City with a check made to the Phoenix Brokerage Company and told me that he and another man had sold some oil to the Fort Worth and Denver Railway, and this check was in payment of this oil. He asked me to run the check through my checking account as if his name appeared in it he would lose his job with the railroad, and he couldn't trust his partner with that much money. . . . I deposited in that bank voucher or vouchers drawn on the Forth Worth and Denver City Railway Company. I got these vouchers from Sam Kestler. I do not know where the vouchers are now. They were made payable to the Phoenix Brokerage Company. There were two vouchers, one in April, 1924, and one in September, 1924. I don't recall the amount of these vouchers; they ran into hundreds of dollars, both of them. They were credited to my account in the bank, and no one else had a right to check on my account. Two-thirds of each deposit was sent to Sam Kestler with New York Exchange checks, the balance, except $100 each, which was given to me for handling the transaction, *Page 314 
was sent to Sam Kestler with my personal checks. . . . Q. Mr. Lindsay, did you ever hear of the Phoenix Brokerage Company? A. No, sir. I lived in Oklahoma City three years. I had no dealings with the Phoenix Brokerage Company other than that related. I never heard of a firm by that name except in those two transactions. These two checks or vouchers came into my possession through Sam Kestler, who brought them to me at Oklahoma City in person. . . . I did not think it peculiar that he should make a trip to Oklahoma City on Sunday on these matters, because he could leave Forth Worth on Saturday night and get back to the office on Monday morning. I did not ask him why he did not mail them, because he frequently came up to spend Sundays with us, and there was nothing unusual about his visit there on Sunday."
The issues submitted to the jury, and their answers thereto, were as follows:
"1. Did defendant's intestate, Samuel Kestler, while acting as auditor of expenditures for plaintiff, falsely and fraudulently, by means of a certain voucher, collect, receive and misappropriate or embezzle the sum of $2,970 belonging to plaintiff as alleged in the complaint? Answer: Yes.
2. Did defendant's intestate, Samuel Kestler, while acting as auditor of expenditures for plaintiff, falsely and fraudulently, by means of a certain voucher, collect, receive and misappropriate or embezzle the sum of $4,080.16 belonging to plaintiff, as alleged in the complaint? Answer: Yes.
3. What damage, if any, is plaintiff entitled to recover of defendant? Answer: $7,050.16.
4. Is plaintiff's cause of action against the defendant barred by the Statute of Limitations? Answer: No."
The defendant made numerous exceptions, assignments of error, and appealed to the Supreme Court.
It was the contention of plaintiff that defendant's intestate, Samuel Kestler, embezzled two sums of money of plaintiff: (1) $2,970 represented by voucher No. 18047, payable to the order of the Phoenix Brokerage Company, for fuel oil, for which plaintiff received no benefit and paid by plaintiff's treasurer 22 April, 1924. Samuel Kestler initiated this voucher and in the absence of his superior, the general auditor, he had authority to sign same. (2) $4,080.16, represented by voucher No. 22691, payable to the order of the Phoenix *Page 315 
Brokerage Company, for fuel oil which plaintiff never received any benefit from and paid by plaintiff's treasurer on 20 September, 1924. Samuel Kestler initiated this voucher and in the absence of his superior, Logan, the general auditor, he had authority to sign the same, and these vouchers were signed in his absence. It may be noted that in the allegations and proof there is a few days discrepancy in the dates of the vouchers in April and September, which is immaterial.
The representative of the Interstate Commerce Commission, in checking up under the Transportation Act, could not find these vouchers, and a very careful search was made by Logan, the general auditor, over samuel Kestler, and they could not be found. Samuel Kestler was auditor of expenditures and there was kept under his immediate control in the department of auditor and expenditures certain original voucher register sheets, kept in a book.
The original sheets, or records, were introduced in evidence in the court below and identified and proved as coming from the proper depository. Record Voucher 18047 is described as material, sent Grant Locomotive Works, amount $2,970, issued to Phoenix Brokerage Company. The writing on this record voucher being in the handwriting of Samuel Kestler. Record Voucher 22691, issued to Phoenix Brokerage Company, for fuel oil, amount $4,080.16. The dates were shown on the original sheets. The moving of the above items is shown in the treasurer's record and the dates. The original sheets and records were under the immediate control of Samuel Kestler. The moving of these items was shown on the treasurer's record under his control. The treasurer testifying to the fact. All this and other like evidence was objected to by defendant and allowed by the court below. Exceptions and assignments of error were duly made to this evidence by defendant, which we think cannot be sustained. The writing on the first record voucher was in the handwriting of Kestler, the records were under his immediate control. These were regular entries that Kestler in the regular course of the business of the company, was in duty bound to keep, under his immediate control. He, in the performance of his duty, was bound to know the import of each entry. Kestler being dead, the record vouchers in his handwriting and under his control were admissible in evidence. The moving of the items, testified to by the department heads was competent. the probative force was for the jury.
Dean Wigmore, in discussing exceptions to the hearsay rule — regular entries — in Vol. 3, 2d ed., at p. 281-2, says: "The rulings upon the subject are not yet harmonious: (a) There are, first, a number of States accepting with practical completeness the conclusion above reached,i. e., in given cases admitting verified regular entries without requiring the salesmen, timekeepers, or other original observers having personal *Page 316 
knowledge, to be produced or accounted for. (b) There are rulings admitting verified regular entries after a showing that the original observer was deceased; possibly absence from the jurisdiction, insanity, or the like, would equally have sufficed."
In the note we find the following: "(1905) Foreman's Insurance Co. v.Seaboard A. L. Co., 138 N.C. 42, 50 S.E. 452 (time of arrival of train at H.; the train sheet, verified by the train dispatcher at R., admitted without calling the operator at H., who reported the arrival; (one of thebest modern opinions by Connor, J.) (1908); Jones v. Atlantic C. L. R. Co.,148 N.C. 449, 62 S.E. 521 (conductor's train record, not admitted to show condition of stock solely because the conductor himself was not offered)." Horse Exchange v. Wilson, 152 N.C. 21; S. v. Hendricks,187 N.C. 327; Flowers v. Spears, 190 N.C. 747; Morrison v. FinanceCo., 197 N.C. 322; Heid Bros. v. Commercial Nat. Bank (Texas), 24 A.L.R., at p. 910-11.
In Peebles v. Idol, ante, at p. 60, this observation is made: "It has been held that the books of a bank when they are proved to have come from the proper depository, are admissible in evidence. 10 R. C. L., p. 1175, sec. 373." See Lumber Co. v. Lumber Co., 176 N.C. 500; S. v. Hightower,187 N.C. 300.
It was in evidence that there was no such firm in existence in Oklahoma City as the Phoenix Brokerage Company. The two vouchers made payable to the Phoenix Brokerage Company were deposited by L. D. Lindsay, a brother-in-law of Samuel Kestler, in the name of L. D. Lindsay, the first on 24 April, 1924, and the other on 24 September, 1924, in the Fidelity National Bank of Oklahoma City and paid to Kestler. Two-thirds of each deposit was sent to Kestler by New York Exchange check and the balance, except $200 retained by Lindsay for his services, was sent to Kestler by personal check of Lindsay. The defendant excepted to this evidence and assigned error as incompetent under C. S., 1795. We cannot so hold.
The material part of this section for our consideration is as follows: "A party or person interested in the event, or a person from, through or under whom such a party or interested person derives his interest or title by assignment or otherwise." Lindsay was in no way a party or a person interested in the result of the action.
"Exclusion does not apply when witness has no interest in the result of the action. The interest which disqualifies one from testifying under C. S., 1795, supra, is a direct, legal or pecuniary interest in the event of the action. Helsabeck v. Doub, 167 N.C. 205; In re Gorham,177 N.C. 275." Herring v. Ipock, 187 N.C. at p. 461.
C. S., 441, subsection 9, is as follows: "For relief on the ground of fraud or mistake; the cause of action shall not be deemed to have *Page 317 
accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake."
Mr. McIntosh in N.C. Practice Procedure, speaking to the subject, at p. 167-8, sec. 183, says: "An action for relief on the ground of fraud or mistake must be brought within three years after the cause of action accrues; but the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake. . . . The cause of action is deemed to have accrued from the discovery by the injured party of the facts constituting fraud or mistake, and not from the date of the fraud or mistake. Following the rule formerly applied in equity, knowledge is a fact to be determined by the circumstances of each case, and the statute runs from the time the injured party knows of the fraud or mistake, or could by reasonable diligence have discovered it."
It is contended by defendant: "The summons was issued 13 April, 1928; the transaction relative to the vouchers took place in April and September, 1924, more than three years before the action was brought." That Logan was the general auditor and could by reasonable diligence have discovered it. Logan testified: "Q. If you had been diligent in 1924 as you were in 1927 you could have discovered it? A. I think not. I am diligent all the time." This, and other evidence bearing on this aspect, was left to the jury.
The charge, taken as a whole, we think, covered this aspect of the case. There was evidence objected to in the record and like evidence unobjected to. We cannot see that this line of objection was prejudicial. The able briefs of counsel go into every phase of the evidence and law on the subject, and, after a through consideration of the record and briefs, we do not think there is any prejudicial or reversible error, and we find in the judgment
No error.