BRENEMAN COMPANY AND THE BRENEMAN COMPANY v. C. D.
CUNNINGHAM AND MRS. W. H. OSBORNE.

(Filed 19 September, 1934.)

**Evidence I b—In action for accounting, books of account are competent
when properly identified and verified.**

Defendant sold plaintiff the capital stock of a corporation under the
terms of a written contract, which provided, among other things, that
plaintiff should liquidate the assets of the corporation, and that if the
liquidated value of its assets should prove less than their book or fixed
value, defendant should pay plaintiff such difference. Plaintiff's action on
the contract to recover the alleged difference between the liquidated value
of the assets and their book value was referred to a referee, and plaintiff
offered in evidence certain books of account purporting to show the trans-
actions involved in the liquidation of the corporation's assets, which books
of account were identified by plaintiff's witness, who testified that he had
complete charge of the liquidation of the assets of the corporation, that
all entries therein had been made under his supervision and control, and
that he had personally verified the books and found them correct. It
further appeared that the books were kept in the ordinary course of busi-
ness, that they came from a proper custody, and that the entries were
material and relevant, and there was no evidence of erasures, irregulari-
ties, or omissions. *Held*, the books of account were properly admitted in
evidence, and defendant's contention that they were incompetent as self-
serving declarations cannot be sustained.

SCHENCK, J., took no part in the consideration or decision of this case.

CIVIL ACTION, before *Sink, J.*, at December Term, 1933, of GUILFORD.

On 2 March, 1927, the plaintiff Breneman Company, a corporation,
the Cunningham Springless Shade Company, a corporation, and the
defendant Cunningham entered into a contract, reciting that the Shade
Company was a corporation, with principal place of business in Greens-
boro, and having a capital stock of $50,000, divided into five hundred
shares of the par value of $100.00 each, and that Cunningham was the
owner of the entire capital stock of said corporation. It was further
provided that Breneman Company was desirous of purchasing from
Cunningham the entire capital stock of the Shade Corporation. It was
further recited "that the annexed report of the Cunningham Springless
Shade Company of Greensboro, N. C., dated 26 February, 1927, made
by Vestal & Company, certified public accountants, of Greensboro, N. C.,
and made a part hereof, is a full and true schedule of the true assets
and liabilities of the said third party (Cunningham Springless Shade
Company) as of the close of business on 26 February, 1927, and it is
accepted by all parties hereto as a basis of this agreement." It was
further provided that Cunningham "hereby sells to Breneman Company

five hundred shares of the capital stock of said third party (Shade Corporation), and Breneman Company agrees to pay Cunningham the sum of $10,000—on or before 12 March, 1927, upon delivery of said certificate of stock duly endorsed on the back thereof." It was further provided in the contract "that the fixed valuation of the assets of the party of the third part at the close of business . . . on 26 February, 1927, over and above all liabilities, was $9,059.03." Said contract provides as follows: "That the party of the third part shall and will, to the best of its ability and judgment, within the period of one year from date hereof, collect all notes and accounts receivable, sell and dispose of all merchandise now on hand, and pay off and discharge all outstanding liabilities, as shown by the aforesaid report of examination. . . . The party of the first part (Cunningham) shall, in the event the actual liquidated value of said assets of the third party (Shade Corporation) shall be less than the agreed fixed value, paid to said second party (Breneman Company) the difference between the actual liquidated value and the said fixed value. The party of the second part shall, in the event the actual liquidated value of said assets of the third party shall be greater than the said fixed value, pay to the first party any and all sums realized over and above the said agreed fixed value thereof." In order to guarantee performance of the contract the defendant Cunningham and the defendant Mrs. W. H. Osborne executed and delivered a bond of indemnity payable to the plaintiff Breneman Company.

Thereupon the plaintiff undertook to liquidate the said corporation in accordance with the contract, and after the same had been liquidated, the plaintiff asserted that the defendant Cunningham was indebted to it in the sum of $10,846.24. It was alleged that this indebtedness accrued from loss on inventory, unsold articles of merchandise, losses on notes, and accounts receivable, etc. The defendants alleged that the liquidation of said corporation was carelessly and negligently done, and that they were not liable. The account consisted of a multitude of various items, and the cause was referred to Hon. Thomas C. Hoyle as referee. At the hearing the plaintiff offered in evidence certain books of accounts, purporting to show the transactions involved in the liquidation of Cunningham Springless Shade Corporation. W. A. Anderson, witness for plaintiff, testified: "I was in the employ of the Cunningham Springless Shade Company about nine or ten months prior to March, 1927. At first I was sales manager in charge of selling and merchandising. Following that I was manager of the company and continued as such until the capital stock was purchased by The Breneman Company of Ohio. . . . After that I continued in the capacity of manager for a year or so. . . . I had charge of the office, books and records, papers and documents and the business of the company,

everything. Book entries were made under my direction and supervision. Other records and documents were kept under my supervision and direction. Following the making of the contract between Mr. Cunningham and the Cunningham Springless Shade Company, and The Breneman Company on 2 March, 1927, I was in complete charge of the operation of the entire business from that time until December, 1929. I had charge of the books, records, documents, and the papers of the company. The book entries were made under my direction. I employed help and they followed my instructions in keeping the records." Thereupon plaintiff offered in evidence the collection register of the Shade Corporation, the collection of the register of the plaintiff after the contract of liquidation, ledger sheets "covering the accounts that remained uncollected 1 March, 1928, copies of the original invoices, covering the loss, shrinkage of the Cunningham Springless Shade Company inventory up to 1 March, 1929." The witness then proceeded to testify as to the entries from the foregoing books and records. The witness said: "I have verified all of the items that made up the statement of losses." The general ledger of the plaintiff at Greensboro in connection with the liquidation of said corporation was then offered in evidence. The witness was cross-examined by the defendants with reference to the various items of account as shown by the books and, among other things, said: "The ledger sheets introduced were statements of account prepared by me and taken from the invoices we had to, pay. I know the records were accurate because they have been verified. We verified them with the records we had with the manufacturer. . . . We kept books in the usual way."

The referee found "that the plaintiff, The Breneman Company, is the same corporation as the Cunningham Springless Shade Company, the name of the corporation having been changed by law." He then proceeded to find various facts and stated the accounts between the parties, and found "that the excess of the loss arising from liquidation and the sums properly paid for undisclosed liabilities, exceeds the credits admitted by the plaintiff to be due on the account as aforesaid by $7,707.90." Whereupon he found as a conclusion of law that the defendants, by virtue of said contract and bond, are indebted to the plaintiff in the sum of $7,707.90.

The defendant filed various exceptions to the report of the referee. These exceptions are based principally upon the admission of the books and records of the plaintiff company, and to the fact that the referee based his findings upon an examination of such books and records.

The trial judge overruled the exceptions and adjudged that the plaintiff was entitled to recover of the defendants the sum of $7,707.90.

From judgment upon the verdict defendants appealed.

*Shuping & Hampton for plaintiffs.*
*Sapp & Sapp and King & King for defendants.*

BROGDEN, J. In actions for an accounting, are books of account admissible in evidence?

The defendant Cunningham owned the capital stock of the Cunningham Springless Shade Corporation, a North Carolina corporation. He made a contract with the plaintiff Breneman Company, an Ohio corporation, to sell said stock for the sum of $10,000. Thereupon the Ohio corporation contracted to liquidate the Springless Shade Corporation. The parties agreed that the fixed value of the assets of the Shade Corporation at the close of business on 26 February, 1927, over and above all liabilities, was $9,059.03, and the defendant Cunningham agreed to pay to the plaintiff, Ohio corporation, the difference between the said fixed value of said assets and "the actual liquidated value," in the event the latter was less than the former. The name of the Cunningham Springless Shade Company was then duly changed by law to "The Breneman Company."

Pursuant to the terms of the agreement, the referee finds: "That the Cunningham Springless Shade Company sold the greater part of the merchandise on hand at the date of the contract and collected the collectible notes and accounts due at the date aforesaid and paid or caused to be paid all the obligations it agreed to pay; that on or about 1 March, 1928, the Cunningham Springless Shade Company caused to be made to the defendant C. D. Cunningham a report of what had been done under the contract on its behalf; that the defendant C. D. Cunningham performed the contract on his part, except that he failed to pay to the plaintiff Breneman Company the difference between the net amount realized from the liquidation provided by the contract and the fixed assets."

At the hearing before the referee the plaintiff offered W. A. Anderson as a witness. This witness had been manager of the Springless Shade Corporation prior to the date of the contract, and after said date "was in complete charge of the operation of the entire business from that time up until December, 1929." The witness said: "I had charge of the books, records, documents, and the papers of the company. The book entries were made under my direction. . . . A general record was kept in Cincinnati, but it was kept only from information and records that we sent them from Greensboro. I checked the general ledger with our Greensboro records and they reconciled exactly." The defendants objected to the introduction of such books and records, but the referee overruled the objection, admitted the books in evidence, and considered them in making his report. In said report the referee, an eminent

lawyer, stated: "The plaintiffs, over the objection of defendants, offered in evidence the books of the Breneman Company, one of said plaintiffs, and a number of papers which were compiled from said books and other records of said plaintiffs. The referee had grave doubts of the competency of this evidence, and considered very carefully the decisions of our Supreme Court before admitting said evidence. There is a line of cases in North Carolina, beginning at a very early date and coming down to 1923, holding that a person's books are self-serving declarations, and therefore inadmissible. See *Branch v. Ayscue,* 186 N. C., 219, 119 S. E., 201, and *Bland v. Warren,* 65 N. C., 372, and cases cited therein. In recent years our courts seem to have relaxed the rule somewhat and admitted this kind of evidence in some cases and for some purposes. See *Railroad v. Hegwood,* 198 N. C., 309, 151 S. E., 641, and cases cited therein. In the case at bar, the defendants examined their own witnesses and cross-examined the witnesses of the plaintiffs in regard to the documentary evidence aforesaid, and referee has admitted same and considered it carefully in making this report."

The common law would not permit a party to testify in his own behalf, and this philosophy, wrought out at a time when the individual counted for little or nothing and when business transactions consisted largely of barter and exchange, doubtless colored judicial thinking even after such disability was removed by statute; and this may explain the interpretation of the law found in *Bland v. Warren,* 65 N. C., 372, and *Morgan v. Hubbard,* 66 N. C., 394. The onset of modern interpretation first appeared in *Insurance Company v. R. R.,* 138 N. C., 43, 50 S. E., 452. This opinion examined and sifted the various aspects of the question with great learning and accuracy of both thought and expression. Moreover, it has not only been cited frequently in this jurisdiction, but in many others. Indeed, Dean Wigmore, in his work on Evidence, Volume 3, page 283, refers to the opinion as "one of the best modern opinions by Connor, J."

The principle announced in the railroad case, *supra,* has been cited and extended by subsequent decisions. For instance, in *Storey v. Stokes,* 178 N. C., 409, 100 S. E., 689, this Court said: "The book of sales, the entries in which were made under his supervision, was competent to refresh the memory of the witness, and to corroborate him, . . . and, besides, he testified that he had an independent knowledge of the facts and items recorded in it." Also, in *Flowers v. Spears,* 190 N. C., 747, 130 S. E., 710, it is said: "The fact that the cashier did not make the entries in the account shown on the sheet did not render his testimony incompetent. The entries were made by a bookkeeper, employed by the bank, who was under the supervision of the cashier. The fact that the cashier did not personally handle the check and that he had no

personal knowledge of the transactions recorded in the account, as shown by the sheet, did not render his testimony incompetent as based upon hearsay." The same general idea was the basis of the competency of evidence of a bill of lading, record of unloading and of delivery to a drayman of certain material. These records were produced by a clerk of the railroad company "who had charge and control of its records as to matters of this kind." See *Supply Co. v. McCurry,* 199 N. C., 799, 156 S. E., 91. See, also, *R. R. v. Hegwood,* 198 N. C., 309, 151 S. E., 641.

The case of *Branch v. Ayscue,* 186 N. C., 219, is not contrary to the other decisions above mentioned. In the first place, there was no evidence of the nature of the book offered in evidence, or that the entries therein were made by the direction or under the supervision of the deceased. Indeed, the court treated the entries as "an unverified account."

In the case at bar the witness Anderson was in complete charge of the liquidation of the business. The books of account and all entries therein were made under his supervision and control. Moreover, he testified that he had personally verified these records. Furthermore, it appears that the books were kept in the ordinary course of business; that they came from a proper custody; that the entries were material and relevant, and there was no evidence of erasures, irregularities or omissions which tended to cast suspicion upon the accuracy of the records or to challenge their correctness.

Under these circumstances the Court is of the opinion that the records were admissible for the purposes for which they were used at the hearing before the referee.

Affirmed.

SCHENCK, J., took no part in the consideration or decision of this case.