STATE OF NORTH CAROLINA v. DONALD LEROY PROPST

No. 7425SC416

(Filed 7 August 1974)

1. Criminal Law § 29— mental capacity to plead — sufficiency of evidence

Trial court's determination that defendant had sufficient mental capacity to plead to the bill of indictment was supported by the evidence presented at a pretrial hearing held to determine that question.

2. Evidence § 29; Criminal Law § 80— medical records — exception to hearsay rule

The trial court in a homicide case properly allowed a doctor to read clinical notes into evidence although the person who prepared the notes was not available as a witness since medical records made in the regular course of business are admissible as an exception to the hearsay rule.

State v. Propst

3. **Criminal Law § 5— ability to distinguish between right and wrong at time of trial**
    Defendant was not prejudiced by the admission of medical testimony as to his ability to distinguish between right and wrong at the time of the trial.

APPEAL by defendant from *McLelland, Judge,* 15 October 1973 Session of Superior Court held in BURKE *County.* Heard in the Court of Appeals on 11 June 1974.

This is a criminal action wherein the defendant, Donald Leroy Propst, was charged in a bill of indictment, proper in form, with the first degree murder of Ralph Henderson Taylor on 21 February 1966.

Upon the call of the case for trial, the trial court, acting upon the suggestion of the district attorney, which was concurred in by counsel for the defendant, conducted a hearing to determine the competency of the defendant to plead to the bill of indictment. After the testimony of three doctors and defendant's attorney, the trial court made findings and conclusions which include the following:

"I conclude from these findings that the defendant is mentally ill, that his illness is now in partial remission, and that he now has sufficient mental capacity to comprehend his position, understand the nature and object of the criminal proceeding against him, to conduct his defense in a rational manner, and to cooperate with his counsel to the end that any available defense may be interpreted in his behalf.

"I further conclude that the defendant has sufficient mental capacity at this time to plead to the bill of indictment and to receive sentence if convicted."

The defendant entered a plea of not guilty and the State offered evidence tending to show that on 21 February 1966 the defendant, Donald Propst, entered the Taylor Hosiery Mill located in Hildebran, N. C., and started "hollering for Ralph Taylor". Charles Polk, one of the employees of the mill, testified that the defendant walked up to him and said, "Where is Ralph, the son of a b—? I come to kill him." A moment later Ralph Taylor entered the knitting machine room and asked the defendant to leave his place of business. After making this request, Taylor turned and started walking away; however, the

defendant shoved Taylor into a nearby tool room. The defendant then pulled a pistol from his pocket, pointed it at Taylor, and fired twice. Defendant then fled the hosiery mill with his brother Frank who had accompanied him to the mill. Taylor died shortly thereafter from the wounds inflicted by the bullets from the pistol.

Defendant offered evidence tending to establish the following: Frank Propst, defendant's brother, testified that on the day in question the defendant had been drinking heavily and had also taken a small "snap-type box" of aspirin. Defendant and his brother drove to the Taylor Hosiery Mill and upon arrival at the mill Frank Propst pleaded unsuccessfully with his brother not to go inside. Once inside the mill, defendant confronted Ralph Taylor; and Frank Propst testified as to the events which transpired immediately thereafter:

"As they came back up the aisle, Ralph went into the tool room and by that time, Donald went by the tool room door and he turned and looked into the room at Ralph and Ralph came out of the door with a hammer in his hand and about that instance I seen the hammer and I seen the gun. This was the first time I had seen the gun that day. Ralph hit Donald with the hammer on the right hand and the gun fired. The gun fired immediately when the hammer hit. The hammer hit Donald's right hand. I saw the hand after the hammer hit it. There was a black spot where the hammer had hit. I heard another shot fired. After both shots were fired, Donald said, 'Let's go, Frank.' I went and looked in the door and Ralph was lying there. I said, 'Oh, my God, Ralph,' or something to that effect. We walked out the front door and left in the truck."

Defendant also offered the testimony of Dr. Walter A. Sikes, former Superintendent of the Dorothea Dix Hospital, who testified that in his opinion the defendant was unable to know the difference between right and wrong on 21 February 1966 and would not have known at that time that shooting a man was a wrongful act.

From a verdict of guilty of murder in the second degree and a judgment imposed theron of not less than twenty-five (25) nor more than thirty (30) years, the defendant appealed.

*Attorney General Robert Morgan by Assistant Attorney General Thomas B. Wood for the State.*

*Simpson, Martin & Baker by Dan R. Simpson and Samuel E. Aycock for defendant appellant.*

HEDRICK, Judge.

Defendant's first two assignments of error relate to the pre-trial competency hearing held by Judge McLelland. Defendant contends that the trial court erred in the following respects: (1) by admitting incompetent evidence in the form of testimony pertaining to letters allegedly written by defendant when these letters had not been identified as being in the handwriting of defendant; and (2) by "requiring the defendant to stand trial on the charge of murder in the first degree on the basis of the testimony when the only medical testimony presented was that the defendant was incompetent to stand trial." These assignments of error are without merit for the reasons stated below.

Chief Justice Bobbitt in the recent case of *State v. Potter,* 285 N.C. 238, 247, 204 S.E. 2d 649, 655 (1974), reiterated the following rule, which governs the determination of whether a defendant has sufficient mental capacity to plead to the indictment and to conduct a rational defense:

> "In determining a defendant's capacity to stand trial, the test is whether he has the capacity to comprehend his position, to understand the nature and object of the proceedings against him, to conduct his defense in a rational manner, and to cooperate with his counsel to the end that any available defense may be interposed." [citations omitted]

[1] In the instant case, Judge McLelland determined that the circumstances called to his attention by the district attorney were sufficient to merit a formal inquiry to determine whether, when tested by the rule stated above, the defendant had sufficient mental capacity to plead to the indictment and to conduct a rational defense. At this pre-trial hearing the State offered the testimony of Dr. Robert Rollins who testified:

> "I think Mr. Propst comprehends his position as it relates to his being indicted. I have an opinion that he has the ability to understand the nature and object of the proceeding against him, namely a charge of first degree

murder. In my opinion Mr. Propst can cooperate with his attorneys to conduct his defense. He is capable of conducting his defense in a rational manner, and I believe that he can cooperate with his counsel."

A careful review of the evidence presented at the pre-trial hearing discloses that the findings made by the trial judge are supported by competent evidence and as such are binding upon us on the appeal. *Gaster v. Goodwin,* 263 N.C. 441, 139 S.E. 2d 716 (1965). Moreover, these findings are conclusive "even though there is evidence contra, or even though some incompetent evidence may also have been admitted." 1 Strong, N. C. Index 2d, Appeal and Error, § 57, pp. 223-4.

[2]  Next, defendant maintains that the trial court committed error by allowing clinical notes to be read into evidence when the person preparing the notes was not available as a witness. Defendant contends that such evidence is hearsay and should be excluded because the defendant was denied the opportunity to cross-examine the maker of the notes and to test his memory, veracity, etc.

In *Sims v. Insurance Co.,* 257 N.C. 32, 35, 125 S.E. 2d 326, 328, 329 (1962), Justice Clifton Moore made the following germane statement:

"Hospital records, when offered as primary evidence, are hearsay. However, we think they come within one of the well recognized exceptions to the hearsay rule—entries made in the regular course of business. Modern business and professional activities have become so complex, involving so many persons, each performing a different function, that an accurate daily record of each transaction is required in order to prevent utter confusion. An inaccurate and false record would be worse than no record at all. Ordinarily, therefore, records made in the usual course of business, made contemporaneously with the occurrences, acts, and events recorded by one authorized to make them and before litigation has arisen, are admitted upon proper identification and authentication. *Builders Supply Co. v. Dixon,* 246 N.C. 136, 97 S.E. 2d 767; *Breneman Co. v. Cuningham,* 207 N.C. 77, 175 S.E. 829; *Insurance Co. v. R. R.,* 138 N.C. 42, 50 S.E. 452."

\* \* \*

"In instances where hospital records are legally admissible in evidence, proper foundation must, of course,

State v. Propst

be laid for their introduction. The hospital librarian or custodian of the record or other qualified witness must testify to the identity and authenticity of the record and the mode of its preparation, and show that the entries were made at or near to the time of the act, condition, or event recorded, that they were made by persons having knowledge of the data set forth, and that they were made *ante litem motam.* The court should exclude from jury consideration matters in the record which are immaterial and irrelevant to the inquiry, and entries which amount to hearsay on hearsay."

A careful review of the testimony of Dr. Walter Sikes, the witness who read the clinical notes into evidence, reveals complete compliance with the requirements set forth in *Sims, supra.* Therefore, the trial court properly determined the clinical notes to fall within one of the exceptions to the hearsay rule and as such to be admissible into evidence.

[3] Next, the defendant maintains that the court committed prejudicial error in allowing into evidence medical testimony regarding the defendant's ability to discern between right and wrong at the time of the trial. Assuming, *arguendo,* that it was error for this evidence to be admitted, we fail to see how this could possibly constitute prejudicial error and thus this assignment of error is overruled.

Finally, defendant brings forward and argues several other assignments of error which we have carefully examined and find to be nonmeritorious.

The defendant was afforded a fair trial free from prejudicial error.

No error.

Judges PARKER and VAUGHN concur.